# O'BRIEN *v.* PABST BREWING COMPANY.*

### EVIDENCE; CONTRACTS.

1. The construction of written evidence is exclusively for the court.
2. Parol evidence showing the facts and circumstances surrounding a transaction is admissible to aid the court in passing upon the written evidence thereof.
3. In an action by a lessor of hotel property against a creditor of the lessee for breach of an alleged agreement by the defendant to pay the plaintiff $2,000 for consenting to the assignment of the lease by the lessee to the defendant, the trial court properly directs a verdict for the defendant, where it appears that, although the plaintiff executed and delivered a written consent to the assignment of the lease, reciting that the consideration was $2,000, the money was not demanded by the plaintiff at the time; and that the acts and conduct of the parties, and the circumstances surrounding the transaction, showed that the consideration was not to be paid unless the lessee executed an assignment of the lease to the defendant, and that he refused to do so.

No. 1791. Submitted February 11, 1908. Decided March 31, 1908.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on a verdict directed by the court, in an action of assumpsit.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an action of assumpsit instituted against appellee the Pabst Brewing Company, for the recovery of the sum of $2,000. The declaration sets forth that Daniel O'Brien, the original plaintiff, was the owner of what is known as the "Engel hotel"

---

*Evidence—Parol.*—As to rule that parol evidence is not admissible to vary, add to, or alter a written contract, see note to *Durkin* v. *Cobleigh,* 17 L.R.A. 270.

property in this city, which he, the said O'Brien, leased to William A. Engel for a term of ten years from February, 1900; that "it was absolutely essential to any assignment or transfer of said lease that the consent of the plaintiff should first be had and obtained;" that said Engel, who was the lessee of the plaintiff, at the time of the bringing of the suit, was indebted to the defendant, the appellee herein, in a large sum of money for which the defendant had no security, and was desirous of securing from the plaintiff his consent to the assignment of said premises from the said Engel to the said defendant; that the defendant, through its authorized agent, promised and agreed to pay the plaintiff the sum of $2,000 on the delivery by the plaintiff of plaintiff's consent to said assignment; that he duly executed said consent in accordance with his agreement, and delivered the same to the defendant through its agent; and that the defendant, although requested, has refused and neglected to pay said $2,000 or any part thereof.

In the affidavit of defense executed by Herman E. Gasch, appellee's agent in this city, it is averred that the appellee promised to pay the plaintiff the said sum of $2,000 for his written consent for an absolute assignment of said lease "in the event and on the condition only that the lessee should execute said assignment;" that the plaintiff signed said consent upon that understanding; that the assignment was presented to the lessee for execution, and every effort was made to secure his signature thereto, but without success; and that the said lessee never did execute said assignment, and declined to do so, and remained in full possession and enjoyment of said property.

At the trial the following letter addressed to the appellee's agent in this city was introduced in evidence:

Milwaukee, Wis., Mar. 21, 1902.
Mr. Herman E. Gasch, 1307 F St., N. W.,
                    Washington, D. C.

Dear Sir:—

In reply to your favor of the 18th inst. requesting an expression of an opinion from us as to what remuneration we

would be willing to make Mr. O'Brien for his consent to an assignment by Wm. Engel of his lease of the Engel hotel property in Washington to the Pabst Brewing Company, we beg to say that, as our Mr. Schucht has previously explained to Mr. McNally, the only object we have in view in this matter is one of security for the money invested by us in the premises, and which, as you well know, Mr. Engel is perfectly willing to give us providing Mr. O'Brien will consent.

Now, while Mr. O'Brien is neither asked to part with any of his rights or privileges under the present lease, nor to grant any new privileges to the Pabst Brewing Company as tenants, which are not already enjoyed by Mr. Engel, we are willing, as above explained, for the sake of security only, to pay $1,000 in cash to the owner, Mr. O'Brien, for his consent to the assignment to us with the privilege of subletting to others, we however remaining responsible for the rent.

This sum, if Mr. O'Brien chooses to accept it, will be just that much in his pocket without giving anything in return except his consent, which costs him nothing and leaves his present position as landlord undisturbed in every particular.

Kindly submit this offer to Mr. O'Brien through his attorney Mr. McNally, and let us know whether he elects to avail himself of it or not.

Yours truly,

Pabst Brewing Company,

By Fred Pabst, Jr., 2d V. P.

It appears that this letter was submitted to Mr. McNally, attorney for Mr. O'Brien, who thereupon interviewed his client, who declined to consent to the assignment upon the terms proposed in said letter; that negotiations continued for several months, which culminated in O'Brien meeting said Schucht and Gasch at McNally's office for the purpose of executing his consent to an assignment of said lease.

The deposition of Mr. O'Brien, who had meanwhile died, was offered in evidence. The witness identified a paper in duplicate containing a draft of an assignment of said lease,

an assent to said assignment executed by said O'Brien, and an acceptance to be signed by appellee. This paper was offered in evidence and reads as follows:

Washington, D. C., June 11th, 1902.

To be attached to and to become a part of a certain lease bearing date the 5th day of February, A. D. 1900, by and between Daniel O'Brien of the District of Columbia, party of the first part, and William A. Engel, of same place, party of the second part, and recorded in the office of the Recorder of Deeds for the District of Columbia February 16th, A. D. 1900, in Liber No. 2466, folio 378 et seq., one of the Land Records of the said District of Columbia.

For and in consideration of one (1) dollar to me in hand paid, the receipt whereof is hereby acknowledged, and for other valuable considerations, I hereby assign, set over, transfer, and deliver unto the Pabst Brewing Company, a Wisconsin corporation of Milwaukee, Wisconsin, all my right, title, and interest in the within lease and the real estate therein leased to me, to said Pabst Brewing Company for the full term of this lease, to take effect the tenth day of June, A. D. 1902.

In witness whereof I have hereunto set my hand and seal, to this and duplicate of like tenor & date.

——— ——— (Seal).

——— ———

I hereby consent to the above assignment of the within lease from William A. Engel to the Pabst Brewing Company and, in consideration of two thousand (2,000) dollars to me in hand paid, the receipt whereof is hereby acknowledged, I hereby qualify the terms of said lease to the extent that said Pabst Brewing Company shall be allowed to sublet the said real estate in and upon the following conditions, to wit: First, that no subtenant shall be permitted to carry on any unlawful or dangerous business in said premises; and, second, that the Pabst Brewing Company shall always be responsible for the payment of the rent under said lease covenanted to be paid.

In witness whereof I have hereunto set my hand and seal, to this & duplicate of like tenor & date.

Daniel O'Brien.    (Seal).

Witness: M. A. Scheele.

We hereby accept the above assignment of the within lease from William A. Engel to ourselves to all of the terms and conditions of said lease as qualified by the next above-written consent of Daniel O'Brien, lessor.

In witness whereof we have caused these presents to be signed by our president and sealed and attested by our secretary, and we hereby declare that at a regular meeting of the board of directors of our said corporation that ———— ———— was appointed as our attorney to acknowledge these presents for our corporation before a notary public to the end that the same may be recorded in the land records of the District of Columbia.

District of Columbia, to wit:

I, M. A. Scheele, a Notary Public in and for the District aforesaid, do hereby certify that Daniel O'Brien, who is personally well known to me to be the person who executed the aforegoing and annexed assent and assignment of lease dated eleventh day of June, A. D., 1902, personally appeared before me in said District and acknowledged the same assent to assignment of lease to be his act and deed.

[SEAL] Given under my hand and notarial seal this 11th day of June, A. D. 1902.

M. A. Scheele,
Notary Public, D. C.

District of Columbia, to wit:

I, ———— ————, a notary in and for the District aforesaid, do hereby certify that William A. Engel, who is personally well known to me to be the person who executed the

aforesaid and annexed assignment of lease, dated June 11th, A. D. 1902, personally appeared before me in said District and acknowledged the said assignment of lease to be his act and deed.

Given under my hand and notarial seal this 11th day of June, A. D. 1902.

Witness further testified that Mr. McNally was his attorney in this matter; "that he left everything to him; that the had nothing to do with the matter except to instruct McNally as to the price until he met at the office for the purpose of executing the papers." Owing, apparently, to the physical condition of the witness, his testimony was somewhat conflicting. It is clear, however, that he relied wholly upon his attorney in the negotiations leading up to the execution of the said paper. It is also clear that, when said paper was executed, it was handed Gasch and Schucht without any demand whatever for the payment of the $2,000; that it was fully understood that the paper was to be taken to Engel before appellee's agent returned to make payment to the witness. Witness at one point in his testimony said "that he understood that Schucht and Gasch, when they got the papers, were going down to see Engel; that they were going down there, as he believed he understood, for the purpose of getting Engel's signature, and, as soon as they, Gasch and Schucht, got his signature, they were coming back to see him; they said they were going down there to see Engel; and he supposed for that purpose." The witness further testified that he only knew that Engel refused "to make the assignment from the matter stopping; that he collected rent from Engel from that time right straight along, and he continued to be the tenant and the man who paid witness the rent; that Engel has continued to do that right straight along to present time" Witness further testified that, when he first spoke to Mr. McNally with reference to bringing suit, the latter said: "I don't know, I wouldn't bring it."

John E. McNally, Esq., testified that, upon receipt of said

letter of March 21st from the appellee company he consulted his client, O'Brien, who, however, was unwilling to make the assignment for the sum mentioned therein; that, when the negotiations first opened, O'Brien asked witness whether Engel would be injured; that Engel was sent for and came to witness's office and informed witness that he, Engel, wanted to make an assignment of the lease and wanted O'Brien to sign the consent; that, after several months' negotiations, an arrangement was made whereby Gasch and Schucht were to meet O'Brien at his (McNally's) office for the purpose of obtaining O'-Brien's signature to a consent to the assignment of said lease; that O'Brien signed, sealed, and acknowledged the consent and delivered it to Schucht and Gasch, and that they took the paper away with them; that O'Brien waited in his office an hour for Schucht and Gasch, who, however, did not return; that nothing was said at the time the paper was executed about the payment of the $2,000; that some time elapsed before witness got into communication with Gasch and Schucht; that he finally either telephoned or met Gasch, who told him "that he had taken the papers down to Engel to sign them and that the latter and Schucht became very excited over the matter; that the papers were around to Mr. Maurice Smith's office, a member of the bar, now dead." Witness further testified that, when he went to get an order from Gasch for said duplicate papers containing O'Brien's consent," "he probably might have told Gasch that he was sorry the thing had fallen through." Witness said that no demand was ever made for the payment of the $2,000 until Mr. Forrest wrote the appellee a letter on November 24, 1902.

At the conclusion of plaintiff's evidence, a motion was made to instruct the jury to return a verdict for the defendant. This motion was granted, and the plaintiff appealed.

*Mr. Edwin Forrest* for the appellant.

*Mr. J. A. Maedel* and *Mr. D. S. Mackall* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

The principle that the construction of written evidence is exclusively with the court is so well settled that no citation of authorities is necessary to support it. Owing to the statute of frauds, the plaintiff necessarily relied upon the letter of March 21, 1902, from the defendant to its agent, and upon the paper containing the consent to the assignment of the lease. The testimony introduced merely tended to show the facts and circumstances surrounding the transaction, and aided the court in passing upon the written evidence. As the declaration sets forth, Engel was indebted to the defendant in a large sum. He was plaintiff's lessee for a long term of years, and under a lease that he could not legally assign without the previous consent of the plaintiff in writing. The defendant submitted an offer to the plaintiff of $1,000 "for his consent to an assignment" of said lease,—not for his consent that Engel might assign the lease. This offer was conditioned upon a modification of the lease so that the defendant might sublet to others, which indicates that the defendant had in mind at the time the offer was made an actual and consummated assignment of the lease. Inasmuch as, under the terms of the lease, Engel had no authority to execute an assignment until O'Brien had assented thereto in writing, his signature was first obtained. It is apparent, however, that both O'Brien and his counsel then understood the transaction would not be completed until Engel had executed the assignment, for otherwise the $2,000 would have been demanded upon the delivery of the assent. O'Brien's conduct in permitting defendant's agents to take the paper he had signed to Engel for his signature without making any demand upon them, and without in fact saying anything about the payment of the $2,000, is inconsistent with plaintiff's subsequent interpretation of the agreement. It is consistent, however, with the construction which the court evidently placed upon it. As bearing upon the position of McNally at the time, it is significant that he should have remarked to Gasch "that he was sorry the thing had fallen through." It is probably true that O'Brien, being a feeble old man, labored under the im-

pression that he was to receive $2,000 for signing the consent; but it will be remembered that he testified that McNally represented him in the negotiations with the defendant company, and "that he had nothing to do with the matter except to instruct McNally as to the price until he met at the office for the purpose of executing the papers." It is quite possible, also, that McNally, having talked with Engel and believing that he would not object to executing the assignment, said nothing to defendant's agents as to the time when the $2,000 was to be paid. The conduct of both parties at the time O'Brien executed the consent indicates, as we have said before, their then understanding of the terms of the agreement, and it would be unconscionable, in the light of the original proposal which the defendant made to O'Brien, the paper containing the consent, and the facts and circumstances surrounding the transaction, to infer that the defendant ever intended to pay, or in fact agreed to pay, O'Brien the sum of $2,000 unless Engel executed an assignment of the lease, without which O'Brien's consent amounted to nothing.

It appearing that Engel refused to execute the assignment, we think the court was fully justified in directing a verdict.

The judgment, therefore, is affirmed, with costs, and it is so ordered.                                    *Affirmed.*